**FOUNDATION CO. v. UNITED STATES.**

Nos. 42394, M–155.

Court of Claims.
June 1, 1936.

234

LITTLETON, Judge.

The sole question relating to the year 1918 involved in case No. 42394 is whether a jeopardy assessment of an additional tax made by the Commissioner on December 22, 1925, under section 274 (d) of the Revenue Act of 1924, was illegal and void under the facts and circumstances disclosed by the record. While the tax liability of plaintiff for this year was under consideration by the Commissioner, plaintiff executed waivers of the statute of limitation, in the last of which the time within which the Commissioner might assess any additional tax found due was extended to December 31, 1925, and for an additional period of 60 days thereafter if a deficiency notice was mailed under section 274 (a) of the Revenue Act of 1924 and no appeal was taken to the Board of Tax Appeals, and by the number of days between the mailing of a deficiency notice and the final decision by the Board if a deficiency notice should be mailed under section 274 (a) and an appeal taken to the Board.

In December, 1925, the Commissioner was engaged in auditing plaintiff's tax liability for 1918 and had not reached a final decision with respect thereto for the reason that at the same time he was considering the tax liability of plaintiff for other years, and the questions involved in all of these years related to inventory and invested capital adjustments. As a result of this situation the Commissioner, because of the approaching expiration of the statute of limitation on assessment as extended by the waivers, made a jeopardy assessment on December 22, 1925, of an additional tax of $447,623.09 for 1918 under section 274 (d) of the Revenue Act of 1924. After notice and demand for payment had been served by the Collector, a telephone conversation took place between plaintiff and the Commissioner, as a result of which immediate collection of the assessment was postponed by the Collector at the suggestion of the Commissioner, and plaintiff did not file any claim for abatement or bond. Plaintiff was fully able to pay any tax found to be due and the Commissioner did not make the jeopardy assessment because of any apprehension or belief on his part that collection of the tax would be jeopardized by the inability of the plaintiff to pay the amount which appeared at that time to be due. The Commissioner made the jeopardy assessment because he had not

I. Herman Sher, of New York City (Satterlee & Green, of New York City, on the brief), for plaintiff.

Guy Patten, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and LITTLETON, WILLIAMS, and WHALEY, Judges.

been able to reach a final decision as to the exact amount due and could not do so before December 31, 1925, when the statute of limitation would bar assessment and collection of any amount for 1918, unless a jeopardy 60-day deficiency notice was mailed under section 274 (a) or a jeopardy assessment was made under section 274 (d) of the Revenue Act of 1924. The matter of the correct tax liability for 1918 and also the tax liability for the years 1917 to 1926, inclusive, was thereafter considered by the Commissioner until he reached his final decision with respect thereto. The final decision of the Commissioner was that plaintiff owed an additional tax of $362,909.43 for 1918, all of which, except $88,561.38, was collected by credits of overpayments determined and allowed for the years 1917 and 1919 to 1921, inclusive, and for 1924 and 1926.

We are unable to concur in plaintiff's contention that the court may review the Commissioner's determination that a jeopardy assessment for 1918 should be made. The decisions of the United States Board of Tax Appeals and of the courts are uniform that the matter of whether he should make an additional assessment before he has reached a final decision with respect to the correct tax liability for any year is by the statute left wholly to the Commissioner, and that his belief, evidenced by such an assessment, cannot be inquired into by the court for the purpose of determining whether he was justified in believing that assessment or collection of the tax would be jeopardized if the assessment were delayed, or whether he should have pursued a different course that may also have been authorized by the statute. Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985; Appeal of California Associated Raisin Co., 1 B.T.A. 1251; Appeal of Oakdale Coal Co., 1 B.T.A. 773; Appeal of Estate of W. S. Tyler, 9 B.T.A. 255; James Couzens v. Commissioner, 11 B.T.A. 1040; Veeder v. Commissioner, 10 B.T.A. 884; Id. (C.C.A.) 36 F.(2d) 342; and Manz Corporation v. United States, 54 F.(2d) 177, 74 Ct.Cl. 5, 13. Counsel for the plaintiff makes a very thorough and interesting argument with reference to jeopardy assessments and the mailing of deficiency notices which is based upon the provisions and history of the Revenue Acts of 1921 and 1924 concerning determinations, assessments, and appeals with respect to taxes in excess of amounts shown

upon returns filed. However, we are unable to find anything in this argument to convince us that a court may inquire into the matter of whether the Commissioner during his consideration and audit was justified in believing that an additional assessment should be made in order that collection of any additional tax finally determined to be due for the year or years under consideration might not be jeopardized. Section 274 (a) and (d) provide as follows:

"(a) If, in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the taxpayer, except as provided in subdivision (d), shall be notified of such deficiency by registered mail, but such deficiency shall be assessed only as hereinafter provided. Within 60 days after such notice is mailed the taxpayer may file an appeal with the Board of Tax Appeals established by section 900. * * *

"(d) If the Commissioner believes that the assessment or collection of a deficiency will be jeopardized by delay such deficiency shall be assessed immediately and notice and demand shall be made by the collector for the payment thereof. In such case the assessment may be made (1) without giving the notice provided in subdivision (a) of this section, or (2) before the expiration of the 60-day period provided in subdivision (a) of this section even though such notice has been given, or (3) at any time prior to the final decision by the Board upon such deficiency even though the taxpayer has filed an appeal. If the taxpayer does not file a claim in abatement as provided in section 279 the deficiency so assessed (or, if the claim so filed covers only a part of the deficiency, then the amount not covered by the claim) shall be paid upon notice and demand from the collector."

The quoted section contemplates that when the Commissioner has reached a final decision as to the tax liability for any year he shall, if the tax determined is greater than that shown on the return and he concludes that there is no reason to believe that assessment or collection of the tax will be jeopardized by delay, mail a deficiency notice from which the taxpayer may, within 60 days thereafter, take the case to the Board of Tax Appeals for hearing and decision by that tribunal before payment. The section also contemplates that if, for any reason, the Commissioner believes that assessment or collection of any additional tax will be jeopardized by delay in mak-

ing an assessment; he shall make an immediate assessment without mailing a 60-day deficiency notice if he has not completed his consideration and reached a final decision, and that such 60-day notice shall be given when he has completed his audit and made a final determination of the amount due. From this final notice the taxpayer may, if he has otherwise complied with the statute, take the case before the Board of Tax Appeals. Appeal of Joseph Garneau Co., Inc., 1 B.T.A. 75; Appeal of Terminal Wine Co., 1 B.T.A. 697. In addition, section 274 expressly provides that although the 60-day deficiency notice has been mailed, the Commissioner shall make an immediate assessment before an appeal is filed with the Board if he believes that the assessment or collection of the tax will be jeopardized by delay of assessment, and if no abatement claim is filed the amount so assessed shall be collected. The Commissioner is also authorized by this section to make such jeopardy assessment after an appeal has been taken to the Board of Tax Appeals and before that tribunal has decided the case. In the case at bar the Commissioner was clearly authorized to pursue any or all of the courses specified, but the fact that he followed one rather than another did not render his action illegal or arbitrary and subject to review by the court. It is admitted that assessment and collection of any tax for 1918 would have been barred within nine days if the Commissioner had not made the jeopardy assessment when he did, or if he had not ended his audit and consideration of the case by preparing and mailing to the plaintiff a 60-day deficiency notice of his final determination in respect of the tax liability for 1918.

The circumstances disclosed by the record indicate that the Commissioner, in making the jeopardy assessment, was endeavoring to comply with plaintiff's urgent request that the questions involved in the several years under consideration be expedited and finally determined as soon as possible (finding 24). By simply making a jeopardy assessment for 1918 under section 274 (d) in order to protect the tax against the bar of the statute of limitation by reason of plaintiff's failure to offer an additional waiver—instead of mailing a jeopardy 60-day deficiency notice under section 274 (a) —the Commissioner kept the year 1918, as well as other years, before him so that he could proceed therewith to a complete and final adjudication of all the matters in controversy, including special assessment, and close the cases by finally determining the tax liability for 1918 and scheduling the overpayments for other years. Both the Commissioner and the plaintiff were aware at that time that plaintiff had the right to have the final decision as to any year in which a deficiency, as defined by the statute, was determined, review by the Board of Tax Appeals even though a jeopardy assessment had been made. However, it was obvious that there would be great delay if the year 1918 was forced into the Board of Tax Appeals in the condition in which it was on December 22, 1925. Time would have been required to prepare and file a petition and the answer of the Commissioner, and to prepare for trial and to try the case before the Board. In the meantime, the overpayments for the years 1917 to 1926 would have been held up pending a decision of the Board as to the amount of additional tax due for 1918. If it be said that the Commissioner could have mailed a jeopardy 60-day deficiency notice and continued with his consideration of the case, the answer is that he was not required to do so, and the legislative history of the Revenue Act of 1926 (44 Stat. 9) discloses that this practice was not adopted to any extent until about 1927 when the special advisory committee was organized pursuant to the Revenue Act of 1926. Cf. Laurence R. Connor et al., Trustees, v. United States, 13 F.Supp. 455, 82 Ct.Cl. ——.

The making of the jeopardy assessment did not deprive plaintiff of any legal rights with respect to the tax for 1918 or any of the other years under consideration, and the only reason plaintiff's appeal to the United States Board of Tax Appeals from the Commissioner's final determination on April 9, 1927, for 1918 was not considered and decided by the Board on its merits was because plaintiff had not filed a claim for abatement and bond for the tax theretofore assessed by the Commissioner. But the fact that a bond was necessary in order that plaintiff might have the merits of the Commissioner's final determination reviewed by the Board cannot affect the legality of the assessment made under section 274 (d) of the Revenue Act of 1924. The procedure followed by the Commissioner was expressly authorized by law and the statute expressly provided for both the assessment and the bond. The Commissioner was not bound to select one

course of procedure in preference to another merely because the course which he did not pursue might have better pleased the taxpayer. Moreover, at the time the jeopardy assessment was made the Commissioner, as it appears under the facts and circumstances, was not in a position to mail a 60-day deficiency notice under section 274 (a) disclosing a considered and accurate determination with respect to the tax liability for 1918, for the reason, as disclosed in his letters to plaintiff, that income and invested capital for 1918 were affected by inventory adjustments involved for a prior year and the tax for subsequent years under consideration was affected by inventory and invested capital adjustments for 1918. Although the Commissioner might have done so, it seems clear from the provisions of section 274 (a) that it was not contemplated that the Commissioner should mail 60-day jeopardy deficiency notices in cases where he had not completed his audit and made a considered determination as to the tax liability for the year involved, thereby clogging the docket of the U. S. Board of Tax Appeals with ill-considered cases.

For the foregoing reasons, plaintiff is not entitled to recover any portion of the additional tax assessed and collected for 1918 or the overpayments allowed for other years involved in case No. 42394.

■ The remaining questions arise in case M–155, in which plaintiff seeks to recover an additional overpayment of $35,692.91 for 1920 and interest of $1,929.83 on an overpayment allowed for 1924. Plaintiff paid $139,529.52 by cash and credit for 1920. The Commissioner determined an overpayment of $103,529.52 which was applied as a credit against the additional tax assessed for 1918. In this determination the Commissioner fixed the correct tax of plaintiff for 1920 at $35,692.91 and plaintiff seeks to recover this amount with interest. The foregoing decision that the additional tax for 1918 was timely assessed disposes of plaintiff's claim that it is entitled to recover the 1920 overpayment allowed by the Commissioner on the ground that the 1918 tax against which it was credited was barred. Plaintiff contends, however, that the tax for 1920 was overpaid in the amount of $35,692.91 in excess of the overpayment allowed by the Commissioner. The alleged additional overpayment for 1920 is based upon the claims (1) that invested capital for 1920 should be increased in

the amount of $341,562 in excess of that allowed by the Commissioner by reason of the acquisition by plaintiff in May 1917 of stock of the Foundation Company, a Delaware corporation, as disclosed in findings 2 to 16, inclusive; (2) that an additional credit of $34,406.25 should have been allowed against the 1920 tax by reason of certain income and profits taxes paid by a wholly-owned subsidiary of plaintiff to the Dominion of Canada; and (3) that invested capital for 1920 was erroneous and excessively reduced on account of 1918 and 1919 taxes.

In addition to the above, plaintiff seeks to recover an item of interest of $1,929.83 alleged to have been allowed but not refunded.

With reference to the invested capital, item (1) above, the issue is the amount which plaintiff is entitled to include in its invested capital for 1920 on account of certain transactions between itself and another corporation of the same name but incorporated under the laws of another state, and the stockholders of the two corporations. Plaintiff was incorporated under the laws of New York and the other corporation under the laws of Delaware.

Plaintiff was organized in 1902 at which time common stock was issued of a par value of $50,000. In 1903 it issued additional stock of the same par value, thus making its stock outstanding $100,000. All of the stock was issued for cash and tangible property of an aggregate cash value equal to the par value of such stock. The same stock was outstanding in 1911 when the first transactions took place between plaintiff and the Delaware company and the stockholders of the two corporations, as hereinafter shown.

The Delaware company was organized May 18, 1911, with an authorized capital stock of $2,100,000, consisting of 5,000 shares of preferred stock of a par value of $100 a share and 16,000 shares of common stock of a par value of $100 a share. May 19, 1911, the Delaware company issued all of its preferred stock (par value, $500,000) for $500,000 in cash, to certain individuals, six of whom owned all the stock of plaintiff and received one-half of the preferred stock of the Delaware company. On the same day the Delaware company issued all of its common stock to the stockholders of plaintiff for all the stock of plaintiff, par value of $100,000, and, in addition, paid to such stockholders $500,000 in cash. It

will thus be seen that after this transaction was completed the Delaware company was the sole stockholder of plaintiff and that condition continued until May, 1917, when the situation was reversed and plaintiff acquired the stock of the Delaware company, as will be shown below.

May 17, 1917, plaintiff secured an authorization to issue 5,000 shares of preferred stock of a par value of $100 a share and 16,000 shares of common stock without par value in lieu of its existing stock of 1,000 shares of common stock of a par value of $100 a share. Then, or shortly thereafter, in May, 1917, plaintiff issued its preferred stock of $500,000 to the stockholders of the Delaware company for like stock of a like par value, and, in addition paid $50,000 to the preferred stockholders of the Delaware company. At or about the same time in May, 1917, plaintiff issued all of its common stock of 16,000 shares to the common stockholders of the Delaware company for the latter company's common stock of a par value of $1,600,000. Likewise at or about the same time plaintiff canceled the stock of the Delaware company and its original stock of a par value of $100,000, and shortly thereafter dissolved the Delaware company.

Plaintiff's contention is that the transaction in 1917 gave rise to a situation where, pursuant to section 326 (a) (2)[1] of the Revenue Act of 1918 and subject to the limitation of section 331[2] of the same act (40 Stat. 1092, 1095) it is entitled to have included in invested capital the actual cash value of the stock of the Delaware company at the time paid in for stock of plaintiff in 1917, but not in excess of the cost of such stock to the previous owners. The Commissioner has admittedly given proper recognition to all costs for things paid in to plaintiff other than on account of the 1917 stock transaction and has made proper adjustment on account of preferred stock. The question here presented is whether that which occurred in 1917 gave rise to an increase in plaintiff's invested capital on account of the market value attaching to the Delaware stock at the time plaintiff's new stock was issued therefor.

We are of opinion that the claim for additional invested capital on this account is without merit. Nothing occurred in 1911 which gave rise to an increase in plaintiff's invested capital since in that year the Delaware company was formed and in a circuitous transaction became the holding company of plaintiff, having at its conclusion $500,000 of preferred stock and $1,600,000 of common stock outstanding and having as the asset back of this stock the entire stock of plaintiff, par value $100,000. Obviously, there was not thereby anything paid in to plaintiff.

The Delaware company continued to hold plaintiff's stock until May, 1917, when the situation was reversed. At that time plaintiff secured an authorization by which it issued $500,000 of preferred stock to the preferred stockholders of the Delaware company for preferred stock of the same par value and at the same time issued 16,000 shares of common stock without par

[1] "(a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section);
* * *

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus. * * *"

[2] "In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 percentum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: Provided, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation."

250

value to the common-stock holders of the Delaware company for common stock of a par value of $1,600,000. Plaintiff then canceled all of the Delaware company stock, its own original stock of $100,-000, and shortly thereafter dissolved the Delaware company. From this we find nothing being paid in or coming to plaintiff in the form of statutory invested capital. It would be legalistic fiction to say that anything was thereby paid to plaintiff. Nothing came to it but stock of the Delaware company which had back of it the original stock of plaintiff and both were immediately erased from the picture, leaving plaintiff where it started, in so far as anything being paid in is concerned, except for the fact it had increased its stock from common stock of $100,000 to preferred stock of $500,000 and common stock of 16,000 shares, without par value. Recognition of an increase in invested capital in such circumstances would thwart the purpose of sections 326 and 331 and would be contrary to the principles laid down in La Belle Iron Works v. United States, 256 U.S. 377, 41 S.Ct. 528, 65 L.Ed. 998, and subsequently followed. Appeal of Regal Shoe Co., 1 B.T.A. 896, and United Cigar Stores of America v. United States, 62 Ct.Cl. 134, and other cases based thereon, cited by plaintiff, did not involve comparable facts and cannot be considered controlling in the situation here presented. Plaintiff cannot therefore recover on this point.

With reference to the claimed additional credit of $34,406.25 in excess of the amount of $35,778.29 allowed by the Commissioner, the facts show that during 1920 and prior thereto plaintiff owned all the stock of the Foundation Company of British Columbia, Limited, a corporation of the Dominion of Canada. The Canadian corporation paid to the Dominion of Canada during 1921 and 1922 income and profits taxes of $61,111.25 on a net taxable income of $244,444.93 derived from sources without the United States. This amount was income of the Canadian corporation in 1919 and the aforesaid tax was paid by the Canadian Company on such income. The net income of plaintiff for 1920 as finally determined was $295,440.55, which included dividends of $150,000 received by it from the Canadian Corporation, which were not deductible under section 234 of the Revenue Act of 1918. These dividends were paid by the Canadian Company from profits realized by it prior to 1920. Both the

Canadian Company and plaintiff employed the accrual method of accounting in keeping their books.

Plaintiff contends that inasmuch as the accrual method of accounting was used, it is entitled to a foreign tax credit of $34,-406.25 against its tax for 1920 on account of the above-mentioned tax of $61,111.25 paid by the Canadian Corporation to the Dominion of Canada and this claimed credit is based upon the provisions of sections 238 and 240 of the Revenue Act of 1918, 40 Stat. 1080, 1081 and section 238 of the Revenue Act of 1921, 42 Stat. 258. The Commissioner allowed plaintiff a foreign tax credit of $35,778.29 for 1920 on account of a tax of $58,993.54, which it paid to the Dominion of Canada, in respect of its income for 1919 but disallowed the claimed credit of $34,406.25 due the Dominion of Canada from the British Columbia Company, plaintiff's subsidiary, for the reason that the tax of the Canadian corporation upon which the claimed credit was based was not paid to the Dominion of Canada until subsequent to 1920. In this we think the Commissioner was correct. Section 238 (a) of the Revenue Act of 1918 provided for a credit of the amount of any tax paid during the taxable year to any foreign country upon income derived from sources therein, and section 240 (c), in providing how the credit to be allowed to a domestic corporation affiliated with a foreign corporation should be determined, provided that: "For the purposes of section 238 a domestic corporation which owns a majority of the voting stock of a foreign corporation shall be deemed to have paid the same proportion of any * * * taxes paid (but not including taxes accrued) by such foreign corporation during the taxable year to any foreign country * * * upon income derived from sources without the United States, which the amount of any dividends (not deductible under section 234) received by such domestic corporation from such foreign corporation during the taxable year bears to the total taxable income of such foreign corporation upon or with respect to which such taxes were paid."

The provisions of section 238 (a) relate to credits for taxes paid to a foreign country by a domestic corporation. In that section the word "paid" means paid or accrued. The Commissioner allowed plaintiff the credit provided for in that section on account of that portion of the foreign tax accrued or which was paid by plaintiff.

However, section 240 (c) provided a different rule with respect to taxes "paid" by a foreign subsidiary of a domestic corporation. In such a case taxes accrued but not paid are specifically excluded as a credit by the statute. The actual payment to the foreign country is made the test of the credit. The Revenue Act of 1921 provided a different rule with respect to such credits, but that act was not retroactive and had no application to the year 1920.

With reference to the claimed interest of $1,929.83 for 1924 which is sought to be recovered on the ground that it was shown on the certificate of overassessment for 1924 and neither credited nor refunded, it appears that the Commissioner determined an overpayment of $31,807.50 for 1924, of which $22,589.55 was credited to 1918 and the balance to the tax of plaintiff as then determined for 1920 and 1921. The overpayment and the credit were allowed after the enactment of section 1116 of the Revenue Act of 1926 (26 U.S.C.A. § 1671 note). Inasmuch as the entire overpayment for 1924 was credited to taxes for prior years, no interest whatever was allowable under the statute on such overpayment. The Commissioner allowed no interest on the 1920 overpayment; however, by an entry made by the Collector the certificate of overassessment delivered to the plaintiff showed interest of $2,271.02 on that part of the 1924 overpayment credited against the 1918 additional assessment, $241.19 of which was applied by the Collector in connection with various credits which he made. The balance of $1,929.83, which is sought to be here recovered, was neither credited nor refunded. The entry by the Collector on the certificate of overassessment of the interest in question was clearly a mistake and was illegal and erroneous, and plaintiff is therefore not entitled to recover on this item.

The last item relates to adjustment of invested capital for 1920 on account of income and profits taxes for 1918 and 1919. In determining invested capital for 1920, the Commissioner reduced earned surplus by $447,623.09 representing the amount of the jeopardy assessment made in 1925 for 1918. He likewise reduced 1920 invested capital by an amount of tax determined for 1919, which was subsequently reduced without any change being made in 1920 invested capital on account of such reduction. In his final determination for 1920, the Commissioner erroneously reduced plaintiff's earned surplus in the amount of $108,359.-

83 on account of the 1918 and 1919 taxes. The correction of this error produces an overpayment for 1920 of $4,356.76 in excess of the overpayment determined and allowed by the Commissioner. This amount plaintiff is entitled to recover with interest in case M–155, and judgment in its favor will accordingly be entered.

Plaintiff is not entitled to recover in case No. 42394 relating to 1918 and the petition is dismissed. In case M–155 plaintiff is entitled to recover $4,356.76 with interest on $887.30 from August 10, 1921, and on $3,469.46 from April 8, 1921, to such date as the Commissioner may determine in accordance with section 177 (b) of the Judicial Code as amended by the Revenue Act of 1928 (28 U.S.C.A. § 284 (b), and judgment will accordingly be entered. It is so ordered.

GREEN, Judge, did not hear this case and took no part in its decision.