## ADLER et al. v. NICHOLAS et al.

### Civ. No. 1928.

District Court, D. Colorado.

Dec. 4, 1946.

David H. Morris, of Denver, Colo., for plaintiffs.

Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., for Ralph Nicholas.

Haney & Haney, of Colorado Springs, Colo., for Martin and Evans and First Nat. Bank.

H. Lawrence Hinkley, Atty. Gen., Duke W. Dunbar, Deputy Atty. Gen., and George K. Thomas, Asst. Atty. Gen., for State Revenue Director.

Ben S. Wendelken, of Colorado Springs, Colo., for Exchange Nat. Bank.

SYMES, District Judge.

This matter is before the court on motion to dismiss filed by the defendant Ralph Nicholas, Collector of Internal Revenue for the District of Colorado. The undisputed facts of the case are as follows:

For some years prior to January 1, 1944, Jacques Adler, individually, was engaged in a general jewelry business. On January 1, 1944, Jacques Adler and May E. Adler formed a general partnership to engage in the jewelry business, which partnership was known and did business under the firm name of "Jacques Adler". Jacques Adler owned sixty per cent of said partnership and May E. Adler owned forty per cent thereof. Under the terms of said partnership agreement, both partners were jointly and severally liable for the debts of the partnership to the same effect as are all partners in a general partnership.

For several years prior to the 1st day of January 1944, Jacques Adler made returns for excise taxes and income taxes and paid such taxes in accordance with such returns. For the years prior to January 1, 1944, May E. Adler made her returns for income taxes and paid the taxes in accordance with such returns, but May E. Adler made no returns for excise taxes prior to January 1, 1944, for the reason that she was not then interested in the jewelry business.

The partnership had a general jewelry store in the city of Colorado Springs and also in the city of Denver.

The partnership became indebted to various creditors, and it became necessary that those partnership debts be paid, and to that end the partnership sold to Martins, on August 1, 1946, the partnership business owned in Colorado Springs, exclusive of the accounts receivable.

As consideration for the purchase of said partnership business in Colorado Springs, Martins paid to the partnership the sum of $78,289.75, $50,000 of which was paid in cash and the remaining $28,289.75 was evidenced by the promissory note of Martins, payable to the partnership. The promissory note executed by Martins contained this provision: "This note is given as part of the purchase price of the business known as Jacques Adler, located in Colorado Springs, Colorado, and payees and maker have by Contract agreed that the money evidenced by this note may be applied by the maker to business debts of the payees providing there are any such debts on the day this note becomes due and payable. Any such payments made on said business debts shall be credited as principal payments on this note".

Martins maintains that the above-quoted clause in the note it executed authorizes it to have the sales tax due to the State of Colorado paid out of the proceeds of this note so as to discharge any lien that the state may have against the property which was purchased by Martins from the partnership.

The partnership deposited said $50,000 in cash in the Exchange National Bank, and drew their various checks against said deposits in said Exchange National Bank, for the purpose of paying the partnership creditors. The $50,000 deposited was not sufficient to pay all of the creditors which it was contemplated would be paid, and to the end that there be sufficient funds to pay said creditors, Jacques Adler and May E. Adler borrowed from the First National Bank the sum of $9,000 for the purpose of depositing the same in the Exchange National Bank in the partnership account in that bank, to the end that the deposit in the Exchange National Bank would be sufficient to pay all checks to creditors of the partnership.

On August 15, 1946, and subsequent to the transactions with Martins above mentioned, the Collector caused to be levied a jeopardy assessment against said partnership in the sum of $19,129.10, and caused to be levied a jeopardy assessment against Jacques Adler individually, for excise taxes, in the sum of $10,424.02, and against Jacques Adler individually, for income taxes in the sum of $55,389.43, and against May E. Adler individually, for income taxes, in the sum of $7,196.56.

On the said 15th day of August 1946, the Collector levied said jeopardy assessment upon the First National Bank of Colorado Springs and thereby froze in that bank the $9,000 above mentioned, which prevented the plaintiffs from depositing said sum in the Exchange National Bank to pay the checks drawn against that account, and at said time the Collector likewise levied said jeopardy assessment against the Exchange National Bank, thereby freezing the entire deposit in that bank, with the result that checks drawn against said Exchange National Bank in the aggregate sum of $37,813.72, were not paid when presented to that bank.

Knowing that said checks above mentioned could not and would not be paid upon presentation to the Exchange National Bank upon which they were drawn, the plaintiff entered into an agreement with Mrs. Evans to the effect that Mrs. Evans placed with the Exchange National Bank, as trustee, the sum of $38,000, for the purpose of having said checks presented to the trustee and paid. Said checks in the amount of $37,789.07 were so presented to the trustee and paid from funds supplied by Mrs. Evans. As consideration to Mrs. Evans, and as a matter of inducing Mrs. Evans to make said deposit for said purpose, the plaintiffs gave to her an order on the Exchange National Bank and on the First National Bank, directing said banks to pay to Mrs. Evans the deposits of the plaintiffs, or either of them, in said banks, subject to the lien of the Collector against said funds. They likewise gave to Mrs. Evans an order on Martins, directing Martins to pay to Mrs. Evans, subject to any lien that the Collector might have, such funds as might be collected by Martins on account of accounts receivable owing to the partnership. The orders on said banks were actually accepted by said banks prior to the time that the Collector demanded and received payment from said banks of said deposits.

After said orders were accepted by said banks, the Collector demanded of said

banks that they pay over to the Collector the amount of the deposits in said banks, and as is shown by the answer of said banks and by the response of the Collector, the First National Bank actually paid over to the Collector the sum of $9,016 and the Exchange National Bank actually paid over to the Collector the sum of $31,366.36. The Collector likewise made jeopardy assessments upon various other people as is shown by his response herein. The aggregate collections made by him and now in his possession amount to the sum of $41,960.01.

It appears there is no dispute as to the priority of the Government lien or the amount due the Collector of Internal Revenue for Federal taxes, nor the amount due the State of Colorado.

The relief demanded is varied, it being asked that the court direct the Exchange National Bank to pay into this court the specific sum of $31,366.36, or so much thereof as is in its hands. That the First National Bank pay into the registry of the court $9,126.11, if the same has not been turned over to the Collector of Internal Revenue. That Martin Jewelers, Inc., be directed to pay into the registry of the court the $28,289.75—or so much thereof as may be due on its note payable to the partnership. That Martin Jewelers pay into the court such sums as it has collected on accounts receivable owing to the partnership. That the Collector of Internal Revenue pay into the registry of the court any and all sums of money heretofore collected from the partnership or the plaintiffs individually as jeopardy assessments. Other relief is also asked for.

An examination of the authorities convinces me that the court has power to grant very little, if any, of the relief demanded. The plaintiff really is attempting to enjoin the collection of jeopardy assessments of taxes lawfully certified to the Collector; asks this Court to adjudicate a disputed tax liability before payment, and the relative rights of the parties to the various sums of money involved, and rights thereto, and to require the Collector to pay into the registry of the court monies collected by distraint and levy, and to abide the decision of the court.

By § 273(f) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 273(f), the plaintiff, in order to secure a stay of jeopardy assessments, is required to give the bond provided for. And, furthermore, the discretion vested in the Commissioner to make jeopardy assessments is not subject to review by the court. Missouri v. Dockery, 191 U.S. 165, 24 S.Ct. 53, 48 L.Ed. 133, 63 L.R.A. 571; Salikoff v. McCaughn, D.C., 24 F.2d 434. Furthermore, the statutory procedure for assessment and collection of a tax from a transferor or transferee, upholds the right of the Government to collect its internal revenue by the summary administrative proceedings, if adequate opportunity be afforded for a later determination of legal rights, and that the procedure provided for in § 280 of the Revenue Act of 1926, as amended by § 311 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code § 311, satisfies the requirement of due process, and affords the taxpayer two methods of judicial review.

Sec. 3653 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3653, provides that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. In the State Railroad Tax Cases (Taylor v. Secor), 92 U.S. 575, 23 L.Ed. 663, the United States Supreme Court holds that the levy of taxes is a legislative and not a judicial function, and the court can neither make, nor cause to be made a new assessment, if the one complained of be erroneous. And that it is necessary that the taxes, without which the state cannot exist, should be regularly and promptly paid. Furthermore, that no injunction, preliminary or final, can be granted to stay collection of taxes, until it is shown that all taxes conceded to be due, or which the court can see should be paid, or which can be shown to be due by affidavits, have been paid or tendered without demanding a receipt in full. The Court says, 92 U.S. page 613:

"It has been repeatedly decided that neither the mere illegality of a tax complained of, nor its injustice nor irregularity, of themselves, give the right to an injunction in a court of equity. * * *

"The government of the United States has provided, both in the customs and in the internal revenue a complete system of corrective justice in regard to all taxes imposed by the general government which in both branches is founded upon the idea of appeals within the executive departments. If the party aggrieved does not obtain satisfaction in this mode, there are provisions for recovering the tax after it has been paid, by suit against the collecting officer. But there is no place in this system for an application to a court of justice until after the money is paid.

"That there might be no misunderstanding of the universality of this principle, it was expressly enacted, in 1867, that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court'".

And continuing on page 614 of 92 U.S. the Court says that no court of equity will allow its injunction to issue except where it may be necessary to protect the citizen whose property is taxed and he has no adequate remedy by the ordinary processes of the law. And that it must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or throw a cloud on the title to real estate, etc.

And the Court continuing further says it is the settled law of this country that an injunction bill to restrain the collection of a tax on the sole ground of illegality of the tax cannot be maintained.

And see Tit. 26 U.S.C.A. Int.Rev.Code, § 3670, making government taxes a lien in favor of the United States on all property, and rights to property, whether real or personal, belonging to such person.

These authorities applied to the facts of this case indicate that the amount of taxes due the Collector, concerning which there is no dispute, should be promptly paid to the Collector out of the funds in dispute, after which he should be dismissed as a party. Thereafter, if there is Federal Jurisdiction—which does not now appear from the allegations of the bill—the parties should recast their pleadings so as to properly frame any issues remaining.

These views may be carried out by stipulation of the parties, or in such manner as may be proper after a further hearing, which the court will grant upon application.