The COMMUNIST PARTY, U. S. A., Plaintiff,

v.

Donald C. MOYSEY, as District Director of Internal Revenue for the District of Lower Manhattan, New York, Defendant.

United States District Court
S. D. New York.

May 23, 1956.

John J. Abt, New York City, for plaintiff.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, for defendant, Alfred P. O'Hara, Miriam R. Goldman, Mathias L. Spiegel, Asst. U. S. Attys., New York City, of counsel.

LEVET, District Judge.

This motion made by plaintiff herein, the Communist Party, U.S.A., seeks an order enjoining and restraining the defendant during the pendency of this action from collecting or attempting to collect from plaintiff or any of its affiliated state organizations by lien, levy or otherwise Federal income taxes assessed against plaintiff for the year 1951.

The complaint, not verified, seeks to enjoin the defendant from enforcement of a jeopardy assessment under Title 26 U.S.C.A. § 6861(a). Plaintiff contends that the assessment and the lien filed and the levy made by the defendant upon the property and assets of the plaintiff herein are unlawful and in violation of constitutional rights of the plaintiff for the following reasons:

(a) That the assessment constitutes a gross abuse of the defendant's discretion under Title 26 U.S.C.A. § 6861;

(b) That the assessment, lien and levy constitute a deprivation of liberty and property of the plaintiff without due process of law and in violation of the Fifth Amendment;

(c) That the assessment, lien and levy against the plaintiff, a political party, constitute a gross and arbitrary discrimination against it and a denial of equal protection of law in violation of the due process clause of the Fifth Amendment; and

(d) That the jeopardy assessment made by the defendant violates plaintiff's rights of free speech and assembly, guaranteed by the First Amendment.

Plaintiff's motion papers contain an affidavit of one Philip Bart, who states that he is the Acting Treasurer of the Communist Party, U.S.A. Bart further asserts that he has read the complaint and that the same is true to his own knowledge except as to matters therein stated on information and belief.

Affiant declares that the funds derived by the plaintiff come from initiation dues and assessments. A campaign to raise the deficit by gifts of money is held each year. This campaign is announced in the "Daily Worker" without payment or charge. Because of the lien and levy made by the defendant on March 27, 1956, this campaign was cancelled "since it was evident that members and supporters of the organization would not make gifts to it knowing that the proceeds of such gifts would be levied upon and seized by the defendant." Consequently, it is said no gifts have been made or received. Bart, therefore, contends that unless a preliminary injunction is issued the members of plaintiff will cease to pay dues, the members and others will refrain from making gifts to the plaintiff and that plaintiff will thereby suffer irreparable injury and destruction.

In opposition, the United States Attorney submitted a deposition of the plaintiff by the aforesaid Philip Bart. The facts adduced by this deposition are as follows:

Bart has been the Acting Treasurer of the Communist Party since January 1956, having been appointed by Eugene Dennis, General Secretary of the organization. Bart says that he is in charge of conducting financial activities but that he is unable to tell the amount of the dues received from the members without examining the books.

Since January 1956, although plaintiff has maintained books reporting payment of dues by the different affiliated state organizations Bart had no direct knowledge of how the state organizations collect dues. The national organization requests the state organizations to pay to national 50% of the total dues collected by the state units, and these amounts are remitted from time to time.

As to the sources of income of plaintiff during 1951, Bart conceded that he could not state specifically what transpired in 1951. Bart testified that for the period from October 1955 through March 1956, approximately $40,000 was collected in dues.

Bart conceded that prior to January 1956, when he became Treasurer, or Acting Treasurer, he had no personal familiarity with the method used in the books of plaintiff. As a matter of fact, prior to October 1955, plaintiff kept no books or records of its expenditures and receipts. Bart had no detailed familiarity with the treatment of income and disbursements. Prior to January 1956, Bart had no personal knowledge of the amount of money received by plaintiff or of the amount expended for any particular purpose.

Bart avers that he found that certain books had been kept since October 1955 and he continued the same method, although it was the opinion of the accountant who began keeping plaintiff's books that there ought to be certain changes. Neither in the entries of payments nor in the expenses is there a use of names in all instances. Faced with specific questions as to the acts of plaintiff in 1951, the witness was unable to answer and he professed that he did not know how much the plaintiff expended during 1951 for hiring halls.

The Party, Bart said, distributes certain literature but does not maintain mailing lists, nor does plaintiff keep lists of its members. The individual organizations have no such lists. The person who becomes a member does not sign anything to become a member but merely pays an initiation fee and is introduced to his particular organization. If accepted, he is made a member, paying dues henceforth to his local club. A portion of these dues is forwarded to the county organization, by the county to the state, by the state to the national organization.

The witness did not know how many members plaintiff had; formerly there were cards showing dues paid by the members, but this practice was discontinued. Asked if the plaintiff raised funds for the "Daily Worker," Bart admitted that the plaintiff was giving pub-

lic support to this newspaper and has raised funds among its members for this purpose.

Bart stated that plaintiff had not filed reports with the Clerk of the House of Representatives showing a statement of donations which it had received each year, but claimed that election committees of the Communist Party had filed such reports in each election in which they participated.

On the books of the plaintiff, even since October 1, 1955, Bart said the receipts sometimes indicate just the first name of certain people; in other instances, were just endorsed, "Friend;" and in other instances, "Cont." There are no other records. The membership is all on the local level and there are no national members. Plaintiff has never filed donee tax returns. Witness estimated that in 1951 there were approximately 25,000 members.

Although the witness asserted that no official letter had been sent out by him in reference to the present remittance of dues from district organizations, he said there were "conversations that there cannot be any dues collected at this time" and that he was a participant in these conversations. The national organization made no effort to have dues transmitted to it from the state or district organizations since the levy was made. The campaign set for this Spring was cancelled by advice from Bart.

As to Paragraph 7 of the complaint, the witness admitted in effect that he had no knowledge thereof. As to Paragraph 16 of the complaint, the witness, in effect, said that he knew of no threats as to further or successive levies upon the property of the plaintiff; as to Paragraph 17, the witness had no specific evidence of any intent on the part of the defendant to destroy the plaintiff as a political party.

The only evidence of any borrowings by the plaintiff since the date of the levy was a loan of $500 and the borrowing of $300 to pay the telephone bill. The witness admitted there was no effort to borrow money; that there had been no collection of dues and no assessments, and no remittance of dues to the national organization since the levy. An organization known as the "Emergency Committee for a Free Press" apparently was instituted, but the witness stated that no funds from it had come to the Communist Party. The physical property of the plaintiff, although sold to one Grace Hutchins, is still being used by the Party in its office.

Bart said: "In an organization such as ours, where the question of an exposure of an individual is so important to the life of that individual, no names were reported." He said: "There were instances, if I can say so, where an individual collected from a number of people, collected a sum equal to four figures, and then that person brought it in as an individual, but not necessarily giving it himself." In spite of this fact, Bart reiterated that no national officer would know the names of these individuals and they would not be in the books and records; no one person retained the knowledge of who these people were: "We do not keep any names of any individuals, regardless of sum."

Title 26 U.S.C.A. § 6861(a) is as follows:

"§ 6861. *Jeopardy assessments of income, estate, and gift taxes*

"(a) *Authority for making.*—If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency, (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof."

Title 26 U.S.C.A. § 273(a), Internal Revenue Code of 1939, read as follows:

"§ 273. *Jeopardy assessments*

"(a) *Authority for making.* If the Commissioner believes that the

assessment or collection of a deficiency will be jeopardized by delay, he shall immediately assess such deficiency (together with all interest, additional amounts or additions to the tax provided for by law) and notice and demand shall be made by the collector for the payment thereof."

The constitutionality of these provisions authorizing jeopardy assessments has been sustained. Dyer v. Gallagher, 6 Cir., 1953, 203 F.2d 477; Continental Products Co. v. Commissioner of Internal Revenue, 1 Cir., 1933, 66 F.2d 434; Harvey v. Early, D.C.W.D.Va.1946, 66 F. Supp. 761, affirmed 4 Cir., 1947, 160 F.2d 836.

There is no doubt that in actions for injunction against levy and sale under a jeopardy assessment, preliminary injunctions have been denied and the actions dismissed. Darnell v. Tomlinson, 5 Cir., 1955, 220 F.2d 894; Salikoff v. McCaughn, D.C.E.D.Pa.1928, 24 F.2d 434; Emaus Silk Co. v. McCaughn, D.C. E.D.Pa.1925, 6 F.2d 660.

Injunctions against enforcements of distraint in excise taxes have also been refused in many cases, such as: Concentrate Mfg. Corporation v. Higgins, 2 Cir., 1937, 90 F.2d 439; Jacoby v. Holey, 2 Cir., 1936, 86 F.2d 108; Burke v. Mingori, 10 Cir., 1942, 128 F.2d 996; Matcovich v. Nickell, 9 Cir., 1943, 134 F.2d 837.

■ The discretion vested in the Commissioner to make jeopardy assessments is not subject to review by this Court. Foundation Co. v. United States, 1936, 15 F.Supp. 229, 246, 247, 83 Ct.Cl. 515; Adler v. Nicholas, D.C.Colo.1946, 70 F. Supp. 514, 516, reversed on other grounds, 10 Cir., 1948, 166 F.2d 674.

In the Foundation case, supra, Judge Littleton in the Court of Claims said that the belief of the Commissioner "evidenced by such an assessment, cannot be inquired into by the court for the purpose of determining whether he was justified in believing that assessment or collection of the tax would be jeopardized if the assessment were delayed, or whether he should have pursued a different course that may also have been authorized by the statute." 15 F.Supp. at page 246. In speaking of the jeopardy assessment, the Court also said: "The Commissioner was not bound to select one course of procedure in preference to another merely because the course which he did not pursue might have better pleased the taxpayer." 15 F.Supp. at pages 247–248.

In Adler v. Nicholas, supra, the opinion states: "[T]he discretion vested in the Commissioner to make jeopardy assessments is not subject to review by the court." 70 F.Supp. at page 516. This case was reversed 166 F.2d 674, on the ground that the levy included property belonging to a third person (taxpayer's wife).

■ Under Title 26 U.S.C.A. § 6861 (a), no prior notice is required since Section 6861(b) provides as follows:

> *"Deficiency letters.*—If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment."

Title 26 U.S.C.A. § 7421(a) is as follows:

> *"§ 7421. Prohibition of suits to restrain assessment or collection*
>
> *"(a) Tax.*—Except as provided in sections 6212(a) and (c), and 6213 (a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

■ This section, which was derived from Section 3224, R.S., applies to income taxes. Dodge v. Osborn, 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557. The purpose of this section was stated in Cadwalader v. Sturgess, 3 Cir., 1924, 297 F. 73, 75, as follows:

> "The Congress, by tax measures enacted from time to time, provides

the revenue with which the national government is sustained. It is necessary to the maintenance of the government that the collection of taxes imposed for this purpose shall not be hindered or delayed, either by those who are charged with their payment, or by the courts in their behalf. Therefore, the law requires, broadly, that all taxes, even those 'erroneously or illegally assessed,' shall be paid when due. The Congress knew, of course, that injustice would occasionally be done by the enforcement of this necessary rule. Therefore, it prescribed a method by which one who has paid a tax 'erroneously or illegally assessed or collected' may recover it. This method contemplates, first, payment of the tax. It then provides for an application to be made by the aggrieved taxable and addressed to the Commissioner of Internal Revenue for refund of the tax. If his application be granted, his grievance has been satisfied; if it be rejected, he may bring suit against the collector in a court of law to recover the amount of the tax and there succeed or fail according to the merits of his case. These proceedings have often been referred to by the Supreme Court as 'a complete and exclusive system of corrective justice' and as providing the sole remedy for a taxpayer against the illegal and erroneous assessment and collection of taxes. Evidently, this method was established 'under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues. In the exercise of that right, it declared by section 3224, R.S. [section 3653, I.R.C.1939], that its officers shall not be enjoined from collecting a tax claimed to have been unjustly assessed, when those officers, in the course of jurisdiction over the subject-matter in question, have made the assess-

ment and claim that it is valid.' " At pages 75–76.

The constitutionality of Section 7421 (a) has been upheld. In re State Railroad Tax Cases, 92 U.S. 575, 23 L.Ed. 663; Snyder v. Marks, 109 U.S. 189, 3 S.Ct. 157, 27 L.Ed. 901; Graham v. DuPont, 262 U.S. 234, 43 S.Ct. 567, 67 L. Ed. 965; Steinhagen Rice Milling Co. v. Scofield, 5 Cir., 1937, 87 F.2d 804.

In the In re State Railroad Tax Cases, supra, the Court, in speaking of this policy, stated:

"It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice." 95 U.S. at pages 613–614, 23 L.Ed. 663.

In Snyder v. Marks, supra, the opinion, in part, is as follows:

"The inhibition of section 3224 applies to all assessments of taxes, made under color of their offices, by internal revenue officers charged with general jurisdiction of the subject of assessing taxes against tobacco manufacturers. The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it. Such has been the current of decisions in the circuit courts of the United States, and we are satisfied it is a correct view of the law." 109 U.S. at page 193, 3 S.Ct. at page 160.

▮ It is true that the apparently unconditional language of Section 7421(a) is subject to exceptions. Concentrate Mfg. Corporation v. Higgins, 2 Cir., 1937, 90 F.2d 439. Here the per curiam opinion of the Second Circuit after review-

ing apparent exceptions set forth this conclusion:

"Although we cannot therefore say that there are no exceptions, they are at best only when the taxpayer is put to the direst necessity, and can make out a case of gross and indisputable oppression, without adequate remedy at law." At pages 440–441.

The plaintiff has cited the following cases in support of its contention that the present case demands an exception to the statutory rule of Title 26 U.S.C.A. § 7421(a): Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Regal Drug Corporation v. Wardell, 260 U.S. 386, 43 S.Ct. 152, 67 L.Ed. 318; Miller v. Standard Nut Margarine Company of Florida, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422; Raffaele v. Granger, 3 Cir., 1952, 196 F.2d 620; Midwest Haulers, Inc., v. Brady, 6 Cir., 1942, 128 F.2d 496; John M. Hirst & Co. v. Gentsch, 6 Cir., 1943, 133 F.2d 247; Mitsukiyo Yoshimura v. Alsup, 9 Cir., 1948, 167 F.2d 104; Allen v. Regents of the University System of Georgia, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448; United States v. Brodson, D.C.E.D.Wis. 1955, 136 F.Supp. 158.[1]

These apparent exceptions may be roughly classified in the following categories:

(a) Suits to enjoin collection of taxes which are not due from the plaintiff but, in fact, are due from others. For example, Raffaele v. Granger, 3 Cir., 1952, 196 F.2d 620, 622, in which the Court enjoined the distraint against a bank account in the joint names of husband and wife " 'as tenants by the entireties' " when the tax was due solely from the husband.

(b) Cases in which plaintiff definitely showed that the taxes sought to be collected were "probably" not validly due. For example, Midwest Haulers, Inc., v. Brady, 6 Cir., 1942, 128 F.2d 496 and John M. Hirst & Co. v. Gentsch, 6 Cir., 1943, 133 F.2d 247.

(c) Cases in which a penalty was involved. For example, Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; Lipke v. Lederer, 259 U.S. 557, 42 S.Ct. 549, 66 L.Ed. 1061; Regal Drug Corporation v. Wardell, 260 U.S. 386, 43 S.Ct. 152, 67 L.Ed. 318; Allen v. Regents of the University System of Georgia, 304 U. S. 439, 58 S.Ct. 980, 82 L.Ed. 1448.

(d) Cases in which it was definitely demonstrated that it was not proper to levy the tax on the commodity in question, such as Miller v. Standard Nut Margarine Company of Florida, 284 U. S. 498, 52 S.Ct. 260, 76 L.Ed. 422.

(e) Cases based upon tax assessments fraudulently obtained by the tax collector by coercion. For example, Mitsukiyo Yoshimura v. Alsup, 9 Cir., 1948, 167 F. 2d 104.

Actually, what are said to be exceptions are more logically and properly catalogued as cases based upon factual situations in which Section 7421(a) is not applicable.

■ Counsel for the plaintiff upon the argument of this motion conceded that there is a heavy burden on the plaintiff under the income tax law and under the authorities to establish exceptional and unusual circumstances which would warrant the intervention of this Court to grant an order enjoining the collection of the tax here. What are these alleged circumstances?

(1) The plaintiff contends that it is organized as a political party, an unin-

---

1. United States v. Brodson, D.C.E.D.Wis. 1955, 136 F.Supp. 158, involved a criminal indictment against the defendant for filing false and fraudulent tax returns. The government had seized and impounded the defendant's books and assets and had imposed a jeopardy assessment. The case merely held that under these conditions the defendant could not obtain a fair trial or due process and the Court dismissed the indictment. Obviously this case has no application to this present proceeding, which is civil and not criminal.

corporated association, that its funds are derived from dues, initiation fees, assessment for members, gifts and donations, and that it is, therefore, exempt.

From the description of its organization and operations by its Treasurer or Acting Treasurer, it may appear that some of its funds may have come from dues, from gifts and from activities or admissions, but there are no records to sustain the exact source of its funds nor the exact disposition of such funds upon expenditure. The plaintiff admits in its complaint that it has not "made or kept financial records in the form and manner required by the income tax laws and regulations." Plaintiff cites no authority or provision supporting its claim for exemption.

(2) Plaintiff contends that it has never been taxed. Obviously such immunity in the past does not demonstrate a reason for continued freedom from taxation in the present or future.

(3) The plaintiff claims the acts of the defendant by precluding the receipt of dues and gifts will make it impossible for plaintiff to operate and so destroy it. Actually, the transmission of dues to the plaintiff and the donation of gifts to its treasury have been temporarily suspended by a voluntary self-imposed ban by the plaintiff itself. Collections were stopped in order to prevent the funds being seized for taxes. The gist of the complaint of the plaintiff is that it is being compelled to pay taxes. From this hardship, unless some plain and unquestioned invalidity, clearly and reasonably demonstrated, appears by the papers on which this motion is brought, this Court has no power to relieve.

The right to distrain is not a denial of due process. Coletti v. Cassidy, D.C. Wyo.1935, 12 F.Supp. 21; Pullan v. Kissinger, C.C.Ohio 1870, 20 Fed.Cas., page 44, No. 11,463, 2 Abb. 94.

As far as I am able to ascertain, no entity has a right to restrain the collection of taxes by distraint or otherwise on the mere ground that the continuance of such entity is threatened.

Congress has the power to lay and collect taxes, Constitution, Art. 1, Section 8, Clause 1, and to lay and collect taxes on income, Sixteenth Amendment. Under this power Congress has the authority to distrain property for the payment of taxes. Springer v. United States, 102 U. S. 586, 26 L.Ed. 253. Although undoutedly the Fifth Amendment qualifies all the provisions of the Constitution insofar as it is applicable, nothing in that amendment operates to take away the grant of the power to tax conferred upon Congress by the Constitution and the Sixteenth Amendment. In thus exercising its power, no want of due process results. McCray v. United States, 195 U.S. 27, 61, 24 S.Ct. 769, 49 L.Ed. 78. "It is also settled beyond dispute that the Constitution is not self-destructive. In other words, that the powers which it confers on the one hand it does not immediately take away on the other; that is to say, that the authority to tax which is given in express terms is not limited or restricted by the subsequent provisions of the Constitution or the amendments thereto, especially by the due process clause of the 5th Amendment." Billings v. United States, 232 U.S. 261, 282, 34 S. Ct. 421, 424, 58 L.Ed. 596; United States v. Bennett, 232 U.S. 299, 34 S.Ct. 433, 58 L.Ed. 612.

Congress has the power to make exemptions from the income tax. Brushaber v. Union Pac. R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493.

(4) Plaintiff claims that other political organizations are not taxed and this fact, it is stated, precludes a tax on the plaintiff since it is claimed such an alleged differentiation constitutes a gross and arbitrary discrimination against the plaintiff and a denial of the equal protection of the laws in violation of the due process clause of the Fifth Amendment. No facts are shown in any of the papers submitted here to indicate that other political parties have a like organization, like financial records and like sources of income. The Fifth Amendment, unlike the Fourteenth, has no equal protection

**340**

clause. La Belle Iron Works v. United States, 256 U.S. 377, 392, 41 S.Ct. 528, 65 L.Ed. 998; Chas. C. Steward Machine Co. v. Davis, 301 U.S. 548, 585, 57 S.Ct. 883, 81 L.Ed. 1279; Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 83 L.Ed. 441. In some cases due process under the Fourteenth Amendment is said to include equal protection of the laws. Leeper v. Texas, 139 U.S. 462, 468, 11 S.Ct. 577, 35 L.Ed. 225; Wilson & Co. v. United Packinghouse Workers, D.C.S.D.N.Y.1949, 83 F.Supp. 162.

For example, it is stated that the terms "due process of law" and "equal protection of the laws" as used in the Fourteenth Amendment mean practically one and the same thing. See United States v. New York, N. H. & H. R. Co., C.C. Mass.1908, 165 F. 742, 745; Wallace v. Currin, 4 Cir., 1938, 95 F.2d 856, affirmed Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; State v. Barrett, 138 N.C. 630, 50 S.E. 506, 514, 1 L.R.A., N.S., 626, dissenting opinion of Brown, J., quoting and adopting definitions in Cooley, Const. Lim. § 335 and Westervelt v. Gregg, 12 N.Y. 202, 62 Am.Dec. 160.

 However, if, for the sake of argument, we assume that the due process clause of the Fifth Amendment includes the doctrine of equal protection of the laws, for which plaintiff pleads, the plaintiff is not deprived of either due process or equal protection of the laws since it has a right to proceed to an adjudication of the tax problem before a Court having plenary jurisdiction of this question. See Ewing v. Mytinger & Casselberry, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088, rehearing denied 340 U.S. 857, 71 S.Ct. 69, 95 L.Ed. 627; Bowles v. Willingham, 321 U.S. 503, 520, 64 S.Ct. 641, 88 L.Ed. 892; Yakus v. United States, 321 U.S. 414, 442, 64 S.Ct. 660, 88 L.Ed. 834. "Equal protection of the laws in the sense it is used in the Fourteenth Amendment implies that all litigants similarly situated may appeal to the Courts for relief under like conditions and without discrimination." Swick v. Glenn L. Martin Co., D.C.Md.

1946, 68 F.Supp. 863, 869, affirmed 4 Cir., 1947, 160 F.2d 483.

(5) The plaintiff complains that the jeopardy assessment and the allegedly threatened and allegedly resultant destruction of the plaintiff as a political party violate plaintiff's right of free speech and assembly, guaranteed by the First Amendment. Rights guaranteed under the First Amendment are not absolute. See United States v. Associated Press, D.C.S.D.N.Y., 1943, 52 F. Supp. 362, affirmed 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013. There is no inherent right in any organization to avoid payment of taxes solely by reason of the fact that it may be engaged in publicity efforts which will perforce cease if it neglects or refuses to pay its taxes.

No basis, therefore, here appears to warrant the granting of the preliminary injunction sought by the plaintiff.

The motion is denied.

Settle order on notice.