**UNITED STATES of America**

**v.**

**Michael BONAGURO, Defendant.**

**No. 68 C 842.**

United States District Court
E. D. New York.

Nov. 18, 1968.

Jesse Zaslav, New York City (Zaslav & Belloff, New York City, of counsel) for defendant.

David M. Quinn, Sp. Atty., Dept. of Justice (Joseph P. Hoey, U. S. Atty., of counsel) for the Government.

## MEMORANDUM AND ORDER

DOOLING, District Judge.

A criminal complaint was filed against MICHAEL BONAGURO on August 6, 1968, charging him with having possessed counterfeit Federal Reserve notes on July 19, 1968. A warrant to arrest Mr. Bonaguro was issued on the same day, and Daniel P. Hurley, of the Secret Service, executed the warrant on August 6, 1968; after the arrest and in the Secret Service office at 90 Church Street, New York, N. Y., Mr. Bonaguro was searched, and $1,978 in currency was taken from his person, along with certain papers. Mr. Hurley testified that after he had warned Mr. Bonaguro about his rights, he asked Mr. Bonaguro about the currency, and he declined to discuss it, on Fifth Amendment grounds. Mr. Bonaguro testified that he did not recall such a question and statement.

At the hearing on Mr. Bonaguro's present motion for an order directing return of the currency and suppressing its use in evidence, he testified that he was a scrap metal dealer, was president of Caton Scrap Metal Corp., and that the currency was what remained, after paying for wages, materials, etc., of $3,700.-90 that he had received on August 2, 1968, from R & Z Metal Corp. for some 10,000 pounds of scrap copper sold on that day. A handwritten bought note on a printed form of R & Z Metal Corp. was produced by Mr. Bonaguro. The transaction had not been mentioned, nor had the bought note been produced, at the time of the arrest.

The Secret Service on or before August 7, 1968, checked the currency to see whether it was "prerecorded" currency, that is, had originated with the Government for use in a transaction expected to secure evidence bearing on suspected criminal conduct; so far as the Secret Service could determine, the currency was not pre-recorded.

Agent Hurley testified that, as is usual when large amounts of currency are seized, the Internal Revenue Service (in addition to other public agencies) was notified of the seizure.

Internal Revenue Agent Anthony Schifeletti testified that generally, as he understood it, the Intelligence Division of the Internal Revenue Service was notified of such currency seizures and, as—again—he understood it, the Intelligence Division forthwith communicates with the Collection or the Audit Division, requesting consideration of jeopardy assessment [26 U.S.C. § 6861(a)]. Mr. Schifeletti stated that, advised of the seizure, he did thereafter assess a tax of $2,021.88 against Mr. Bonaguro. He testified that he obtained information and estimated the tax, based on Mr. Bonaguro's having the $1,978 of currency. He treated Mr. Bonaguro as a married man with two children, and, by reference to Bureau of Labor Statistics data, estimated (for) him cost of living, rent, food and other outlay indicia, taking account, in this estimate, of the place where Mr. Bonaguro lived, and he arrived at an estimated income of $7,-600, to which was added $1,900 as representing the currency, making in all an income of $9,500. Allowing a standard deduction of $950 and a single (?) exemption of $600, produced an estimated income-taxable amount of $7,950. On this he computed a tax of $1,617.50 [26 U.S.C. § 1(a) (2), $1,130 plus 25% of excess over $6,000], and to that tax he added a 25% penalty under 26 U.S.C. § 6658, that is, $404.38, so making up the total assessment of $2,021.88.

It does not appear and, evidently, it is not the case that Mr. Schifeletti ascertained whether or not Mr. Bonaguro had filed a declaration of estimated tax for 1968, or was current or delinquent in the payment of any United States tax. No investigation was made of Mr. Bonaguro's business affairs, and no inquiry was addressed directly to him. It does

not appear that an effort was made to determine whether Mr. Bonaguro was in fact underestimating his tax, or doing anything to put any tax in jeopardy, or to nullify the collection of any tax he owed, beyond what—if anything—could be inferred from his possessing $1,978 in currency when he was arrested on the charge of possessing counterfeit Federal Reserve notes. It does not appear that the complaint underlying the arrest warrant was communicated to the Internal Revenue Service: that document recited information indicative that Mr. Bonaguro was a source of counterfeit currency.

The administrative steps followed were not shown by the Government's evidence. It appears, however, that the Government assumed that it was appropriate

(a) for the Service to declare Mr. Bonaguro's taxable year immediately terminated on the ground of the Service's finding that Mr. Bonaguro designed quickly to do some act tending to prejudice or render wholly or partly ineffectual collection of the income tax for the current year unless the proceeding to collect the tax were brought without delay [26 U.S.C. § 6851(a)], and to give notice of the finding and declaration to Mr. Bonaguro together with a demand for immediate payment of the unpaid tax for the terminated period;

(b) for the Service to assess immediately any "deficiency" in tax for the terminated period that existed under 26 U.S.C. § 6211(a), provided the Service "believes that the assessment or collection of [the] deficiency * * * will be jeopardized by delay," such assessment being made by recording the "liability" of Mr. Bonaguro as taxpayer in the proper tax office, 26 U.S.C. §§ 6203, 6861(a);

(c) for the Service to give notice to Mr. Bonaguro stating the amount of the tax assessed and demanding payment of it, 26 U.S.C. § 6303(a);

(d) for the Service to treat the tax liability so assessed, together with any penalty as a lien in favor of the United States on all Mr. Bonaguro's property rights, including his interest in the $1,978. in currency, from the time Mr. Bonaguro neglected or refused to pay the amount assessed "after demand," 26 U.S.C. § 6321; and

(e) for the Service to collect the tax by levy on the $1,978. subject to the tax lien after the failure or refusal of Mr. Bonaguro to pay it on demand without waiting for the usual 10-day period to expire, the levy being made by demanding that the Secret Service as possessor surrender the property rights subject to the tax lien, 26 U.S.C. §§ 6331(a), 6332(a), (c).

Apparently (see Exhibit B) the Service made a Form 1040 income tax return "for" Mr. Bonaguro under 26 U.S.C. § 6020(b) (1); such a return may be made where the taxpayer fails to make a return required by law or regulation at the prescribed time or makes a false return; the Service is required to make such a return, using its own knowledge and such information as it can obtain by testimony or otherwise. The Statement of Tax Due (Exhibit B) refers to a return filed August 15, 1968, describes the assessment as made under date of August 15, 1968, and states the Form Number as "1040"; The Statement of Tax Due gives the "period ending" as being "8/31/68," but if that were the case, no tax could be due, for in theory income tax accrues at the last moment of the taxable period—since a large last moment loss could obliterate all of the period's taxable net income—and the "tax" here was purportedly assessed under date of August 15, 1968. Cf. Frank Ix & Sons Virginia Corp., 1966, 45 T.C. 533, 543–544; Estate of Levi T. Scofield, 1956, 25 T.C. 774, 783, rev'd on application of principle, Scofield's Estate v. C.I.R., 6th Cir. 1959, 266 F.2d 154, 167. It appears from the Mosleh affidavit that the return was very likely made for the period ending August 13, 1968. The Mosleh affidavit indicates, further, that on August 15, 1968, Revenue Officer Mosleh went to Mr. Bonaguro's resi-

dence and delivered to the "taxpayer's wife, Mrs. Rosalie Bonaguro" the District Director's letter to Mr. Bonaguro and a copy of the assessment; Mr. Mosleh states that he also mailed copies of the letter and assessment to Mr. Bonaguro by certified mail, and it appears from a letter of Mr. Bonaguro's counsel that at some point he received a Notice of Levy on Form 668–A. On August 19, 1968, it appears, Mr. Mosleh took over custody of the money from the Secret Service in order to apply it on Mr. Bonaguro's supposed tax debt.

■ In the instant case the Government failed to present the formal document evidencing its having taken the statutory steps that are the predicate of its assessment, or the assessment itself. It appeared to assume that if the unproved *fact of assessment was not di-* rectly controverted, its procedure was beyond scrutiny and beyond halting because 26 U.S.C. § 7421 forbids suits to restrain the assessment or collection of any tax. The Government fails or declines to recognize that, unless the Government has first pursued the formal deficiency procedures of 26 U.S.C. § 6213(a), no income tax deficiency can be assessed and no levy or court proceeding for collecting an income tax deficiency may be begun or prosecuted, and that if the Government essays to do so, "the making of such assessment or * * * levy * * * may be enjoined by a proceeding in the proper court," notwithstanding the provisions of 26 U.S.C. § 7421(a). The only exception is the case visualized by 26 U.S.C. § 6861, dealing with jeopardy assessments.

Since the Government in the instant case was otherwise under a duty to return Mr. Bonaguro's money to him because it was his and not the Government's, it was incumbent on the Government to bring itself within some exception to the statutory restrictions on claiming a 1968 income tax before the taxable year was over and on direct assessment of alleged income tax deficiencies. Instead of attempting to show, by presenting the formal documents embodying its action, that it had acted within the exceptions, and so making out a right to retain the defendant's currency, the Government insisted in the broadest terms that the Court was without jurisdiction because the Service had the power to assess, had done so, and could insist that all judicial inquiry stop at the asserted fact of assessment and forego inquiry into whether or not the statutory conditions precedent to the Service's right to use the power had been complied with.

■ Three points are clear: *first,* where the Service in the interest of the revenues proceeds by proper steps under Sections 6851 and 6861, its determinations of the facts and of their sufficiency to warrant resort to peremptory collection are not to be reviewed in injunction proceedings; *second,* for all that appeared at the instant hearing, proper invocation of 26 U.S.C. §§ 6851, 6861 might very well have been and may still be warranted; and *third,* the normal resort of persons who conceive themselves aggrieved by procedures properly taken under 26 U.S.C. §§ 6851, 6861 must be the statutory remedies, including *not only the usual refund procedures but also the procedures of 26 U.S. C. §§ 6851(b), (e), 6861(g).*

The critical defect in the Government's position in the instant case is that it has failed to show that it took the formal steps under the statute at all, that it made even internally the findings and declaration required under Section 6851(a), or entertained the belief required by Section 6861(a), or adverted to any data that could induce a reasonable belief that a tax of $1,617.50 was in jeopardy, or filed an involuntary return which was both consistent with the data it had and free of intrinsic repugnancy. The inference is—in short—that it had not acted under the statute to protect the revenue interest and collect a tax that seemed to be in jeopardy, but had made a merely colorable use of the statutory forms at the suggestion of another

agency of government in accordance with a pattern of conduct that is not strange to the courts. See Rinieri v. Scanlon, S.D.N.Y.1966, 254 F.Supp. 469, 474; cf. Pizzarello v. United States, S. D.N.Y.1968, 285 F.Supp. 147, 150–151.

■ The detail of the procedure in the instant case, so far as it can be gleaned from the record, discloses its divorce from tax concern. A tax of $1,617.50 was levied on a taxpayer in the 25% bracket by reason of his possession of $1,978; if all of the currency had been net taxable income, the deficiency would have been only $494.50. The tax was assessed on the basis of allowing a single exemption, yet the Agent testified to estimating the living standard on the assumption that the taxpayer was married and had two children, and the letter and single-man assessment were "served" on the defendant by leaving it with his wife at his residence. The estimated tax fell short of $1,978: a 25% penalty was added under Section 6658 for violating or attempting to violate Section 6851. Since Mr. Bonaguro was not a departing alien who had disobeyed Section 6851(d) (1), he could "violate" Section 6851 only by a failure to pay the sudden tax on demand, and no demand had been made when the penalty was assessed and included in the amount of the original assessment. Such proceedings, unrelieved by the production of evidence to allay the clear inference that no finding was in fact made under Section 6851(a) and no statutory belief in fact existed under Section 6861(a), are not in fact revenue collection proceedings protected from interference by 26 U.S.C. § 7421(a) and Enochs v. Williams Packing & Navigation Co. Inc., 1962, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292, but are acts in evident excess of statutory authority; as such unauthorized acts they are not protected by Section 7421(a) but subject to the prohibition of Section 6213(a) and would be subject to the injunction there authorized if the case had come up in that context. Cf. Leedom v. Kyne, 1958, 358 U.S. 184, 188–189, 79 S.Ct. 180, 3 L.Ed.2d 210; Wolff v.

Selective Service, 2d Cir. 1967, 372 F.2d 817, 825. Here, the context is the simpler one of a motion incident to a criminal complaint and arrest to return property taken during an arrest which the Government has failed to show a right to retain.

No effort was made to show that the arrest and search were unlawful and the Government will be entitled at the trial of the indictment to present proper evidence of Mr. Bonaguro's possession of the currency.

Accordingly, it is

Ordered that the motion of Michael Bonaguro for return of the currency seized from him at the time of his arrest is granted and the motion to suppress evidence that he possessed the currency at the time of arrest is denied.