Donald **SHERMAN** et al., Appellants,

v.

Roland H. **NASH**, District Director of Internal Revenue.

No. 72–1607.

United States Court of Appeals, Third Circuit.

Argued Sept. 5, 1973.

Decided Nov. 27, 1973.

Van Dusen, Circuit Judge, dissented and filed opinion.

Clive S. Cummis, Sills, Beck, Cummis, Radin & Tischman, Newark, N. J., for appellants.

Herbert J. Stern, U. S. Atty., John J. Barry, Stephan E. King, Asst. U. S. Attys., Newark, N. J., for appellee.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

James HUNTER, III, Circuit Judge:

Appellants, Donald and Marcia Sherman, sought in the district court injunctive relief from a jeopardy assessment imposed upon them by the District Director of Internal Revenue ("District Director").[1] The district court held that it was without jurisdiction to review the decision of the District Director. This appeal followed pursuant to the jurisdiction granted this court by 28 U.S.C. § 1291. We reverse.

On April 7, 1971, there was delivered to the Shermans' New Jersey residence a demand for payment of taxes and notification that the Internal Revenue Service ("IRS") had seized their home and cars and had levied upon their bank accounts. This apparently was the first notification sent to the Shermans informing them that the IRS considered the tax liability reported on their tax return for the years 1965 to 1969 to be incorrectly computed.

On April 30, 1971, the Shermans filed a claim for abatement of the jeopardy assessment, pursuant to 26 U.S.C. § 6861(g).[2] Subsequently, the IRS on June 4, 1971 sent a deficiency letter as required by 26 U.S.C. § 6861(b)[3] and on August 12, 1971 forwarded new notices and demands for payment. The asserted deficiencies in these subsequent notices were of different amounts and were considerably less than the amount originally demanded.[4]

After receipt of these notices, the Shermans petitioned the United States Tax Court for a redetermination of their tax liability. This action is presently pending before that court. Not having received a reply to their claim for abatement, the Shermans on October

---

1. Appellants' children, who originally were complainants in the district court, are not involved in this appeal. On April 26, 1972, the parties entered a stipulation dismissing the complaint on behalf of the children and withdrawing the assessment as to the children.

2. 26 U.S.C. § 6861(g) provides:
"*Abatement if jeopardy does not exist.*— The Secretary or his delegate may abate the jeopardy assessment if he finds that jeopardy does not exist. . . ."

3. 26 U.S.C. § 6861(b) provides:
"*Deficiency letters.*—If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment."

4. On April 7, 1971, when the jeopardy assessment was imposed, the IRS asserted a deficiency in the amount of $1,542,133.71 of which $639,862.38 was for penalties and interest. Appellants allege in their complaint that the notice of June 4, 1971 claimed a tax deficiency in the amount of $422,187.84 and the notice of August 12, 1971 made a demand for payment for taxes, penalties and interest in the sum of $1,194.087.45. At oral argument it was disclosed that the IRS is presently conducting a reaudit.

8, 1971 brought suit in the district court seeking a review of the District Director's action. The Shermans' complaint alleged, *inter alia*, that the assessment was impairing Mr. Sherman's personal credit, resulting in great harm to his business ventures which were largely dependent on his credit; that this further impaired his ability to meet personal debts and provide for his family; and that the assessment was arbitrary and unreasonable, lacking any justification and imposed solely to harass and coerce plaintiffs for improper purposes. In support of this latter allegation, the Shermans argue on this appeal that the IRS was assisting the Justice Department in an attempt to force Mr. Sherman to appear before a grand jury investigating various criminal activities in Hudson County, New Jersey.[5]

Initially, we emphasize that the only question before us is whether and to what extent a district court has jurisdiction to review a decision of the District Director imposing a jeopardy assessment. We are therefore concerned solely with interpreting those statutes which grant or limit the jurisdiction of the district court over the issues raised by the Shermans.

For many years under 26 U.S.C. § 7421 and its predecessors, Congress has withheld from courts jurisdiction to enjoin the "assessment or collection" of "any tax."[6] This restraint against injunctions has given rise to what has been commonly referred to as the "pay and sue" doctrine, the essence of which is that before a taxpayer may resort to the courts for a review of a tax assessment, he must first pay the assessment. After much criticism of this doctrine, Congress recognized the harshness and inadequacy of granting judicial review only through a suit for refund,[7] and, in 26 U.S.C. § 6213 and its predecessors,[8] provided a broad exception to section 7421 by giving the taxpayer the right of judicial review *before* any assessment and collection of a deficiency "in respect of any tax imposed by subtitle A or B or chapter 42" may be "made, begun or prosecuted."[9] In the present case, the

---

5. The record on this appeal reveals that a government agent, whose connection with the IRS is unclear, had served a subpoena on Mr. Sherman on March 30, 1971 in the Bahamas, where Mr. Sherman alleges he was vacationing from early February until April 13, 1971. A memorandum prepared by the agent following his encounter with Mr. Sherman discloses:

> "Mr. Sherman stated that he had been in the Bahamas since early February, 1971, to avoid service of process. He stated that he had no intention of returning to the United States to honor the subpoena I served upon him. He also stated that he was contemplating moving himself and his family to the Republic of Ghana, Africa, where, he stated, he would be safe from any further proceeding. He stated he was aware of the income tax investigation being conducted and thought he could be financially ruined by the results of this investigation."

6. 26 U.S.C. § 7421 provides:
> "(a) *Tax.*—Except as provided in sections . . . 6213(a) . . . , no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ."

7. The legislative history of section 274 of the Revenue Act of 1924 (the original predeces-

sor of 26 U.S.C. §§ 6212, 6213) discloses the following:
> "The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment. The payment of a large additional tax on income received several years previous and which may have, since its receipt been either wiped out by subsequent losses, invested in nonliquid assets, or spent, sometimes forces taxpayers into bankruptcy, and often causes great financial hardship and sacrifice. These results are not remedied by permitting the taxpayer to sue for the recovery of the tax after this payment. He is entitled to an appeal and to a determination of his liability for the tax prior to its payment." H.R.Rep.No.179, 68th Cong., 1st Sess. 7 (1924), 1939–1 Cum.Bull. 246.

8. See note 6 *supra*.

9. 26 U.S.C. § 6213(a) provides:
> "Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B or chapter 42 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the

taxes allegedly owed by the Shermans were imposed under subtitle A (income taxes) of the Internal Revenue Code of 1954, and the Shermans have sought in the Tax Court a redetermination of their tax liability. Thus, pending a Tax Court decision which has become final, section 6213 clearly grants the district court jurisdiction to enjoin the assessments and levies imposed by the District Director on the Shermans and their property, *unless* such assessment was imposed in accordance with the authority granted in the jeopardy assessment provisions of section 6861.[10] Section 6861 by contrast reflects the Congressional recognition that in the limited circumstances where the collection of revenue seems to be in jeopardy, any hardship resulting from levying on a taxpayer's assets prior to judicial review is outweighed by the Government's need to protect revenue which would otherwise be lost.

■ Our decision today in no way deviates from this Congressional policy, for we fully concur with those courts which have concluded that Congress withheld jurisdiction from the district courts to review the sufficiency of the facts relied upon by the IRS to support a belief that jeopardy exists. *E. g.,* Transport Manufacturing & Equipment Co. v. Trainor, 382 F.2d 793 (8th Cir. 1967); United States v. Bonaguro, 294 F.Supp. 750, 753 (E.D.N.Y.1968). This does not mean, however, that Congress intended that by merely following the formal procedures of section 6861, the

IRS should have thereby complete license to act arbitrarily and in bad faith and for other than the purpose of preserving revenue. *See* Iannelli v. Commissioner of Internal Revenue, 487 F.2d 317 (3d Cir., filed June 29, 1973); *Bonaguro, supra.*

■■ When the IRS has acted ostensibly under section 6861, but in fact has used the jeopardy assessment as a device to harass a taxpayer or as a leverage to exert pressure on a taxpayer for nontax purposes, it has exceeded its statutory authority. Section 7421 does not shield such unauthorized acts from judicial review; since they are not authorized by section 6861, they are prohibited by the general provisions of section 6213 and are subject to the injunction authorized therein. For these reasons we conclude that the allegations in the Shermans' complaint to the effect that the only reason the IRS imposed the jeopardy assessment was to harass and coerce the plaintiffs for improper purposes are sufficient to give the district court jurisdiction under 26 U.S.C. § 6213.

In remanding to the district court, we note briefly that a jeopardy assessment, imposed in good faith, may have a myriad of incidental effects on a taxpayer, some of which may beneficially inure to other departments of government. So long as the IRS, however, acts from a good faith concern that its revenue interest is in jeopardy, its actions are shielded from injunctions by section 7421.[11]

---

case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. *Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court."* (Emphasis added.)

10. 26 U.S.C. § 6861(a) provides:
"*Authority for Making.*—If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of sec-

tion 6213(a), immediately assess such deficiency . . . . "

11. *See* Iannelli v. Commissioner of Internal Revenue, 487 F.2d 317 (3d Cir., filed June 29, 1973). In finding the actions of the IRS to be bona fide, the court in *Iannelli* noted that the taxpayers had not disputed that they may have owed the government taxes which were unpaid and that in the aggregate the property levied upon would probably yield substantial revenue. While these were factors in the court's analysis, it is important to recognize that *Iannelli* did not hold that by merely denying that one owed any taxes, could one prevent a district court

■ Finally, since an action of this nature seeks equitable relief, the district court should consider possible equitable defenses, such as laches, and should insure that the taxpayers seek promptly and without delay final judicial determination of their tax liability.

The order of the district court shall be vacated and the cause remanded for further proceedings not inconsistent with this opinion.

VAN DUSEN, Circuit Judge (dissenting):

Since the majority opinion seems to me inconsistent with this court's recent decision in Iannelli v. Long, 487 F.2d 317 (3d Cir. 1973), as well as with the great majority of federal cases[1] considering 26 U.S.C. § 6861(a)[2] and 26 U.S.C. § 7421,[3] I respectfully dissent. In *Iannelli*, Judge Hastie recognized a narrow exception to the prohibition of suits restraining the assessment or collection of taxes in 26 U.S.C. § 7421, using this language:

" . . . if a levy on property is in formal guise an effort to collect taxes but in fact is only a device for harassing and punishing a wrongdoer without honest anticipation that the levy may yield money owed for taxes, it is arguable that a suit to restrain the tax collector's enterprise is not in reality a suit to restrain the collection of taxes. . . .

. . . . . .

"Though one of the government's objectives in this undertaking to seize all of the taxpayers' discoverable property may have been to put economic pressure upon persons believed to be engaged in large scale criminal activities, the jeopardy assessment and consequent levies also appear to have been bona fide and potentially productive attempts to collect revenue. And bona fide efforts to collect taxes through lawful procedure are the very

from finding that the IRS had acted in good faith. To so conclude would be inconsistent with the rationale of Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). Also, while a jeopardy assessment imposed upon property which will yield little or no revenue is evidence of bad faith by the IRS, *Iannelli* did not hold that merely because the property levied upon will probably yield substantial revenue, a court must then *always* find that the IRS had acted in good faith.

1. *See, e. g.,* Enoch v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); Flora v. United States, 362 U.S. 145, 175–177, 80 S.Ct. 630, 4 L.Ed. 2d 623 (1960); Transport Manufacturing and Equipment Co. v. Trainor, 382 F.2d 793, 799 (8th Cir. 1967); Johnson v. Wall, 329 F.2d 149 (4th Cir. 1964). In the *Transport Manufacturing case*, the court said:
   " . . . we believe that the same principles that govern the validity of the District Director's imposition of a jeopardy assessment should also apply to and control his refusal to abate that assessment. Under Section 273(a) of the Internal Revenue Code of 1939, which gives to the District Director broad discretionary power to make jeopardy assessments, the single limitation on the exercise of the Director's authority is that he must be-

lieve that the ultimate collection of the tax will be jeopardized by delay. For this reason the courts have refused to scrutinize the grounds underlying the Director's determination of jeopardy and have accordingly declined to substitute their judgment for that of the Director. Field v. United States, 263 F.2d 758, 763 (5th Cir. 1959), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959); Lloyd v. Patterson, supra, 242 F.2d [742] at 744 [5th Cir. 1957]; Publisher's New Press, Inc. v. Moysey, 141 F.Supp. 340, 343 (S.D. N.Y.1956); Communist Party, U. S. A. v. Moysey, 141 F.Supp. 332, 336 (S.D.N.Y. 1956). The corresponding authority to abate jeopardy assessments, conferred upon the District Director under Section 273(k) of the 1939 Code, is of a similar discretionary character, and does not impose a mandatory duty on the Director to abate a particular jeopardy assessment. Cf. Poretto v. Usry, 295 F.2d 499 (5th Cir. 1961), cert. denied, 369 U.S. 810, 82 S.Ct. 687, 7 L.Ed. 2d 612 (1962). Absent some patent showing of illegality and other extraordinary or exceptional circumstances, we will not intercede to compel the abatement of an otherwise proper jeopardy assessment."

2. See footnote 19 of majority opinion.

3. See footnote 6 of majority opinion.

undertakings that Congress has protected through the enactment of section 7421(a) against frustration or delay by litigation."

The majority relies on the conclusory allegations in paragraph 19 of the complaint [4] that the jeopardy assessment "is illegal, arbitrary and unreasonable" and that "the only reason" for such assessment "has been an attempt to harass and coerce the plaintiffs for improper purposes." Contrary to these general allegations, the record contains the memorandum of an interview by Richard T. Phillips with the husband taxpayer on March 30 and 31, 1971, in Nassau, Bahamas, quoted in note 5 of the majority opinion, in which such taxpayer conceded that "he was aware of the income tax investigation being conducted and thought he could be financially ruined by the results of this investigation." Further, he stated that "he was contemplating moving himself and his family to the Republic of Ghana, Africa, where, he stated, he would be safe from any further proceeding."

On such a record, the income tax authorities were, at the least, entitled to issue the prompt jeopardy assessment of early April 1971. The good faith of the authorities is indicated by the decrease of the amount of the assessment several times since early April 1971. The failure of the authorities to withdraw the jeopardy assessment because the husband taxpayer returned to this country in mid-April 1971 and filed in November 1971 an affidavit saying he "stood ready to pay any deficiency properly determined to be due from me" (16a) but that his tax returns were correct as filed, does not justify the issuance of an order vacating the jeopardy assessment, which is what appellants seek. This is particularly true where the district court made a finding that "I don't think there is any irreparable injury here" (20a).

I would affirm the district court order of April 18, 1972, dismissing the action insofar as it was brought by the husband and wife plaintiffs.

---

4. This paragraph reads as follows:

"19. The jeopardy assessment made by the defendant is illegal, arbitrary and unreasonable. The collection of any tax which may be determined against the plaintiffs has never been and is not now jeopardized by any delay in assessment. There is no evidence whatsoever to legally justify the aforesaid wrongful assessment made by the defendant, and there is no legal basis for the continued imposition of the said jeopardy assessment against the plaintiffs herein. The only reason for defendant's action has been an attempt to harass and coerce the plaintiffs for improper purposes."