

 Robert M. Taylor, Abraham J. Brem Levy, Philadelphia, Pa., for appellees.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Richard W. Perkins, Dennis M. Donohue, Ernest J. Brown, Tax Div., Dept. of Justice, Washington, D. C., Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., for appellants.

Before FORMAN, HUNTER and GARTH, Circuit Judges.

**Henry THORNTON et al., Appellees,**

v.

**UNITED STATES of America, and Alfred L. Whinston, District Director of Internal Revenue, Appellants.**

No. 73–1422.

United States Court of Appeals, Third Circuit.

Submitted Dec. 14, 1973.

Decided Feb. 20, 1974.

## OPINION OF THE COURT

GARTH, Circuit Judge.

The defendants appeal from an order of the District Court dated January 19, 1973 which granted the taxpayers' motion to enjoin certain jeopardy assessments and which ordered the return of certain properties and monies seized by the defendants pursuant to those assessments. Jurisdiction is based on 28 U.S. C. § 1291. A detailing of the procedural history is necessary to understand our disposition of this appeal.

### I.

On June 21 and 22, 1972, the District Director of Internal Revenue made certain jeopardy assessments against the plaintiffs Henry and Ernestine Thorn-

ton and two corporations,[1] managed, operated and owned by Henry Thornton. The plaintiffs thereupon on June 27, 1972 filed a Complaint, and a Motion for a "Restraining Order and Preliminary Injunction". The Complaint *inter alia* alleged that the actions of the District Director—in making the assessments and the levies and in seizing certain property [2]—were taken in bad faith to harass the plaintiffs; were unlawful, illegal and violated the plaintiffs' constitutional and statutory rights; and exceeded the authority of the Director. Furthermore, plaintiffs claimed that the statute under which the Director acted was unconstitutional. Injunctive relief was sought, as well as the return of the liquor licenses, the voiding of the assessments and levies, and a declaration that plaintiffs had no liability to the defendants.

On the same day that the Complaint and the Motion for Preliminary Injunction were filed, an informal agreement was executed by the parties, which provided for the return of the two liquor licenses upon the delivery by plaintiffs to the defendants of a $2,500 bond. The bond was furnished on July 7, 1972.[3]

On August 10, 1972 the plaintiffs moved to "Stay Levy and Sale on and of Plaintiff's Assets and for Obtaining Defendant's Computations of Alleged Deficiencies".[4] That motion was made returnable on September 19, 1972. No testimony, affidavits or other evidence was produced at the hearing, at which only oral arguments were made. Subsequent to the hearing the plaintiffs filed a brief (on October 22, 1972) which included a statement that the jeopardy assessments were not personally made by the District Director of Internal Revenue, but were rather made by a subordinate.

On January 19, 1973 (filed January 22, 1973) the District Court entered its memorandum and order which (1) granted the plaintiffs' motion for a permanent injunction to enjoin the jeopardy assessments of June 11 [sic] 1972 and June 22, 1972, and (2) ordered that any monies, property or other funds taken by the Government be returned to the plaintiffs, and (3) ordered that the defendants' motion for a declaratory judgment on the merits of the case be denied.[5]

Implicit in the Court's opinion which held the assessments to be illegal was a finding that they were not personally made by the District Director of Internal Revenue, Alfred L. Whinston, but rather were authorized by a Group Chief. Relying solely on this ground, the Court invalidated the jeopardy assessments.

On January 29, 1973 the defendants moved to vacate the Court's order of January 19, 1973 and sought a rehearing. In support of this motion the defendants submitted an affidavit to sup-

1. Mickey's Bar, Inc. and New Checkers Cafe, Inc.

2. Included in the property seized, were the liquor licenses under which Mickey's Bar, Inc. and New Checkers Cafe, Inc. operated.

3. We mention this "transaction" because the return of the liquor licenses was an important aspect of relief sought in the Motion for Preliminary Injunction. We can only surmise that the reason the motion was not pressed and hence not scheduled was that the licenses were relinquished by the posting of a bond.

4. Although the motion as indicated was directed only to a stay of levy and sale and for computations of alleged deficiencies, the memorandum filed by the plaintiffs on Octo-

ber 22, 1972 stated that it was "in support of Plaintiffs' Action to have the Court Order and Direct the Defendants to abate the jeopardy assessments and release the liens made against the Plaintiffs . . . and to rescind and withdraw any and all levies and seizures made and issued against said Plaintiffs' assets either in their hands or in the hands of third parties, and to return to said Plaintiffs any and all of their assets seized by Defendants."

5. The record reveals no motion made by either party for a declaratory judgment. We would assume, however, from the context of the Court's order and from its opinion that the Court had reference to *plaintiffs* rather than to *defendants* with respect to this "motion".

port their contentions that the assessments were legally authorized.[6]

On February 14, 1973 the defendants' motion to vacate the January 19, 1973 order, and for rehearing, was denied. This appeal taken from the January 19, 1973 order (which granted plaintiffs' motion for permanent injunction against the defendants) then followed.

## II.

§ 7421(a) of the Internal Revenue Code of 1954 [7] provides, (with certain provisions not relevant here) that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." Exceptions to this express prohibition have been allowed only in limited areas and for extraordinary circumstances. Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S. Ct. 1125, 8 L.Ed.2d 292 (1961); Iannelli v. Long, 487 F.2d 317 (3d Cir., 1973); Sherman v. Nash, 488 F.2d 1081 (3d Cir., 1973). The taxpayer has the burden of proof to show that he falls within the exceptions of the § 7421 prohibition

against suits. *See* Enochs v. Williams Packing & Navigation Co., *supra*; Transport Manufacturing and Equipment Co. of Del. v. Trainer, 382 F.2d 793 (8th Cir. 1967).

Procedurally, all that was before the District Court when the permanent injunction issued was plaintiffs' motion limited by its terms to "Stay Levy and Sale" and to obtain "Defendant's [sic] Computations of Alleged Deficiencies." We cannot ascertain whether or not the District Court considered in conjunction with that motion, the pleadings entitled "Motion for Restraining Order and Preliminary Injunction" filed with the Complaint on June 27, 1972. It is evident from its opinion, however, that the District Court having found that the District Director had not personally approved the assessments and that hence they were unauthorized, then and there determined that the entire litigation should be disposed of solely on that ground and by its final order.[8]

In any event, prior to October 22, 1972 (the date plaintiffs filed their brief, which was some 30 days after the

---

6. The affidavit was executed by James T. Rideoutte the Assistant District Director of Internal Revenue in Philadelphia. It stated that from June 16, 1972 through July 21, 1972 the District Director [Whinston] was absent from his office; that Whinston had designated Rideoutte to act as District Director; and that during the period from June 16, 1972 through July 21, 1972 Rideoutte had accordingly approved jeopardy assessments against the plaintiffs. A memorandum of Alfred L. Whinston was attached to the affidavit supporting the designation of Rideoutte as Acting District Director and providing that "correspondence and documents requiring the personal signature of the Director should be prepared for the signature of the Acting District Director. . . ."

7. 26 U.S.C. § 7421(a).

8. 26 U.S.C. § 6861 provides:

"(a) Authority for making.—If the Secretary or his delegate believes that the assessment or collection of a deficiency, as defined in section 6211, will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all

interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary of his delegate for the payment thereof."

The District Court construed this statute and Rev.Proc. 60–4, 1960 1 Cum.Bull. 877 as requiring *personal approval* by the District Director of Internal Revenue stating in its opinion:

"  .    .    .   Nowhere in the procedure, regulations or statutory law is there any interpretation that allows the delegate to delegate his power to authorize a jeopardy assessment."

We do not reach this question as our disposition of this appeal rests on other grounds. However, since further proceedings before the District Court will be necessary, at which time we would expect that the defendants' proof regarding Rideoutte's status as an Acting Director (see fn. 6 supra) would be considered, we call attention to 26 U.S.C. § 7701(a)(12) "Definitions" "Delegate"; and Rev.Reg. § 301.7701-9(a)– (d) which shed additional light on this subject. In this connection we note that an Acting Assistant Director is a "delegate" within the meaning of 26 U.S.C. § 6861.

oral argument) no issue respecting improper authorization of the assessments had been raised. Neither the Complaint nor any other pleading contained any such allegation. Not even in the oral argument of September 19, 1972 did the taxpayers suggest that the assessments were improper because they were not personally made by the District Director. It was not until October 22, 1972 when the plaintiffs filed their only brief (post-hearing), that for the first time the plaintiffs raised the issue which triggered the Court's opinion and order of January 19, 1973.[9] Through a hearsay non-sworn statement, plaintiffs asserted *in their brief*:

"The Internal Revenue Service, through its Revenue Officers and Group Chief, Mr. Thomas Meehan, admitted to Plaintiffs' counsel . . . *'That the said jeopardy assessments were not personally made by the District Director, Alfred L. Whinston, who was away on leave from his office, and that the jeopardy assessments were made by a subordinate employee of the Internal Revenue Service.'*" (emphasis supplied)

■ Notwithstanding the lack of evidentiary underpinning, the District Court held that the assessments were illegal. The difficulty with the District Court's reasoning and holding is that there is no evidence in the record to support such a finding. Not only had the taxpayers failed to meet their burden[10] of showing lack of authorization (or any other matter sufficient to bring them within the rare exceptions to § 7421), but they had totally failed to produce any evidence whatsoever which would require a countershowing by defendants.[11] A statement in a brief or in oral argument does not constitute evidence. *See* United States v. Howard, 360 F.2d 373, 376 fn. 4 (3d Cir. 1966); Slaughter v. Philadelphia National Bank, 417 F.2d 21, 32 fn. 20 (3d Cir. 1969); Shock v. Tester, 405 F.2d 852 (8th Cir. 1969).

■ Findings of fact are to be made upon evidence, and are not to be set aside unless clearly erroneous. F.R.Civ. P. 52(a), Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972). The District Court's finding that the assessments were unauthorized is wholly without an evidential basis and is clearly erroneous.

The January 19, 1973 order of the District Court will be vacated and the cause remanded to that Court for further proceedings not inconsistent with this opinion.

---

9. The defendants' brief dealing solely with jurisdictional issues was filed four days before the September 19, 1972 hearing. The record of the September 19 hearing reveals the following colloquy between Mr. Levy (attorney for the plaintiffs) and the Court. This colloquy, in addition to setting a time for the filing of plaintiffs' brief also indicates that the District Court at that time was not thinking of final disposition of the merits:

"The Court: Mr. Levy, since you have not had an opportunity to answer the brief of the Government, how much time do you need to do that?
Mr. Levy: 10 days.
The Court: I think, frankly, we must do that *before we go into the merits of the case.*" (emphasis supplied)

10. Transport Manufacturing and Equipment Co. of Del. v. Trainer, supra.

11. As the procedural history reveals, the defendants had no knowledge of the "unauthorized assessment" issue when their brief was submitted, or at the time of the September 19, 1972 oral argument. Hence, at no time did the defendants ever have the opportunity to introduce proofs respecting this issue. Even had there been an opportunity afforded to the defendants to ". . . counter the argument that the assessment was made illegally . . ." as the District Court held, in the absence of any affirmative evidential showing by the plaintiffs, the defendants had no obligation to come forward with proofs.

When for the first time it became evident to the defendants that the District Court was relying on the plaintiffs' representations concerning "unauthorized assessments", a motion for rehearing was filed supported by affidavit (see fn. 6 supra). This motion was answered by the plaintiffs, *but again without affidavits or evidence*. The defendants' motion was denied without hearing on February 14, 1973.