

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-2009

# USA v. Snyder

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4024

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Snyder" (2009). *2009 Decisions.* Paper 1209.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1209

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-4024

———————

UNITED STATES OF AMERICA

v.

GEORGE C. SNYDER; SHARON A. SNYDER,
Appellants

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 06-00141)
District Judge:  Honorable Arthur J. Schwab

———————

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 29, 2009

Before: BARRY, AMBRO and SMITH , Circuit Judges

(Opinion filed : June 10, 2009)

———————

OPINION

———————

PER CURIAM

    Appellants George Snyder and Sharon Snyder (collectively, "the Snyders") appeal

from three orders of the District Court.  The first two are judgment orders describing the

total amount of the Snyders' federal tax assessments.  The third order denied George

Snyder's motion to enjoin the Government from garnishing his Social Security checks for

the purpose of satisfying his outstanding tax liability.  For the reasons that follow, we will

affirm the orders of the District Court.

I.

George and Sharon Snyder are husband and wife and long-time residents of

Pennsylvania.  In the mid-1980's, the Snyders held proprietary interests in a variety of

businesses, including motels, a glass factory, a farm, a mold-making operation, and a

small resort.  The Snyders filed their federal income tax return for 1988 in May 1990.

They reported income from the sale of a property, revenues from their motels, and income

from interest, among other things.  As to deductions, the Snyder's claimed that they had

lost almost two million dollars because of "Business bad debt ('Fires, Thefts, etc.')."[1]

In March 1992, the Government issued a notice of deficiency concerning the

Snyder's 1988 tax return.  Soon after, the Snyders attempted to amend their 1988 return,

including an additional itemized deduction of over seventy-two million dollars for theft

loss, the majority of which the Snyders attributed to allegedly stolen "Glass molds,

Equipment, Fixtures, Supplies, Etc."  During proceedings before the United States Tax

Court in 1995, the Snyders gave various explanations to substantiate the losses claimed

---

[1] Unless otherwise specified, all quotations are taken from the opinion of the United States Tax Court in George C. Snyder, et ux. v. Commissioner, T.C. Memo. 1995-285 (1995).

on the 1988 return, including one that attributed the losses to theft from "a $90 million cash hoard kept in a 30-by-30-foot, underground, fire-proof, fortified room underneath the Blue Moon Motel that not even Mrs. Snyder knew about."

The Tax Court found the Snyders' explanations "incredible" and unsubstantiated, and sustained the Government's disallowance of certain losses, property taxes, self-employment taxes, and additions to tax that were claimed on the Snyders' original 1988 return. Pursuant to that decision, the Government assessed the Snyders a deficiency in federal individual income taxes for 1988, an accuracy penalty, a negligence penalty, and accumulated interest. In 2004, George Snyder was also assessed deficiencies for federal individual income taxes for the years 1991, 1992, and 1993, as well as fraud penalties and interest.[2] Since the Snyders did not appeal from these decisions of the Tax Court, they became final. See 26 U.S.C. § 7481(a)(1).

## II.

As of September 2005, the Snyders had not repaid their tax liabilities in full, and interest continued to accrue. So, in February 2006 the Government filed a complaint in the District Court for the Western District of Pennsylvania, the first four counts of which requested that the Snyders' tax assessments be reduced to judgment. The Snyders filed

---

[2] According to the District Court, Sharon Snyder was granted "innocent spouse" relief from joint and several liability for the 1991, 1992, and 1993 deficiencies. See Kindred v. C.I.R., 454 F.3d 688, 698 (7th Cir. 2006) (discussing statutory prerequisites for innocent spouse relief).

3

several counterclaims. In April 2007, the District Court granted the Government's unopposed motion for summary judgment, finding that "[b]ecause these liabilities have been fully adjudicated, they are res judicata and cannot be challenged." The District Court also dismissed the Snyders' counterclaims, characterizing them as "quintessential example[s] of an insubstantial, implausible or otherwise completely-devoid-of-merit" counterclaim.

The Snyders moved for reconsideration, which the District Court granted in part to allow them another opportunity to oppose the Government's motion for summary judgment. After the Snyders filed a brief and the Government filed its response, the District Court reaffirmed its grant of summary judgment in favor of the Government. A judgment order was entered in June 2007, stating that the Snyders' joint indebtedness was $1,808,676.70, and that George Snyder's individual indebtedness was $3,033,741.68. The Snyders again moved for reconsideration, claiming that the Government's indebtedness calculations were incorrect and unsupported by reliable evidence. The District Court granted the motion in part to allow the Snyders to file objections to the indebtedness calculations, which they did.

In affirming its June 2007 judgment, the District Court noted that instead of providing legitimate reasons why the Government's indebtedness calculations were in error, the purported objections showed that George Snyder specifically "continues to obfuscate, deny, distract, and disdain not only the legitimacy of the government's tax

4

claims, but also the very judicial proceedings that are designed to protect him." Two weeks later, George Snyder individually filed a "petition to enjoin enforcement of judgment in violation of 42 U.S.C. § 407," claiming that the Government has been impermissibly garnishing his Social Security checks, which he alleges are his only source of income.[3] The District Court denied the motion to enjoin, and the Snyders appealed from that order and the two judgment orders.

## III.

The Snyders have not submitted any argument on appeal, so we will analyze the only two questions fairly presented: 1) whether the District Court erred in adopting the Government's indebtedness calculations; and 2) whether the District Court erred in denying George Snyder's motion to enjoin the garnishment of his Social Security checks.[4]

As to the first question, we affirm the judgment orders of the District Court because it correctly recognized the preclusive effect of the Tax Court's liability calculations on future claims by the Snyders concerning the extent of their tax liabilities. Barring certain exceptions not present in this case, "if a claim of liability or non-liability

---

[3] "Section 407(a), commonly called the [Social Security] Act's 'antiattachment' provision" protects Social Security benefits from "execution, levy, attachment, garnishment, or other legal process." Wash. Dept. of Social Servs. v. Keffeler, 537 U.S. 371, 380, 382 (2003).

[4] We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment in favor of the Government. See Mellon Bank Corp.v. First Union Real Estate Equity and Mortgage Inv., 951 F.2d 1399, 1404 (3d Cir. 1991).

relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year." Commissioner v. Sunnen, 333 U.S. 591, 598 (1948).  See also United States v. Bottenfield, 442 F.2d 1007, 1008 (3d Cir. 1971).

As to the second question, we affirm the District Court's order disposing of George Snyder's motion to enjoin, but do so on the alternative basis that the District Court lacked jurisdiction over the motion under the Anti-Injunction Act.  See 26 U.S.C. § 7421(a); Sherman v. Nash, 488 F.2d 1081, 1083 (3d Cir. 1973) ("under 26 U.S.C. § 7421 and its predecessors, Congress has withheld from courts jurisdiction to enjoin the 'assessment or collection' of 'any tax'").  There are exceptions to the Anti-Injunction Act's general proscription, see Flynn v. United States ex rel. Eggers, 786 F.2d 586, 589 (3d Cir. 1986), but they are inapplicable given the facts of this case.[5]

There being no substantial question presented by this appeal, we will summarily affirm the orders of the District Court.  See LAR 27.4; I.O.P. 10.6.

---

[5] And even if the District Court had jurisdiction, the result would not change because section 6334(c) of the Internal Revenue Code completely undermines the substance of George Snyder's argument.  See 26 U.S.C.A. § 6334(c) ("[n]otwithstanding any other law of the United States (including section 207 of the Social Security Act), no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)") (emphasis added).